**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **RENARDO L. LYNCH,** | ) |
| Plaintiff, | ) )  ) |
| v. | ) No. 09 C 7276 )  |
| **NORTHEAST REGIONAL COMMUTER RAILROAD CORPORATION d/b/a/ METRA/METROPOLITAN RAIL, a corporation,** | ) ) ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

On November 19, 2009, plaintiff, a Building and Bridge ("B&B") Mechanic employed by defendant Metra, sued Metra under the Federal Employers' Liability Act, 45 U.S.C. §§ 51-60, ("FELA"), alleging that he was injured when the top rail of a fence he was installing fell and struck his neck and shoulders. Now before me is Metra's motion for summary judgment, which I grant for the reasons that follow.

I.

At the time of his injury, plaintiff had been a Metra employee for roughly twenty years, and he had worked as a B&B Mechanic for most of that time. Plaintiff had also worked as a B&B Foreman for six or seven years, although he was not the foreman on the job at which he was injured. Plaintiff testified that as a B&B Mechanic, he installs fences "quite frequently," i.e., two or three times a

month.  Lynch Dep., Def.'s Mot., Exh. A. at 23:8-16.[1]  He further testified that B&B mechanics do not receive training for installing fences but learn to install fences through "on-the-job training by other co-workers."  Id., 22:15-23.

Fence installations generally proceed in several phases, and the job at issue--at the Western Avenue Station Depot--followed the usual procedure.  First, the B&B crew installs end posts, which are cemented into the ground and allowed to "cure" for a few days.  Once the cement has set and the posts are secure, the crew installs a top rail by cutting the rail to the appropriate length (if need be) and placing the ends into "cups" clamped to the end posts.  The remainder of the fence is then installed by unrolling a length of "mesh," which is stretched and secured to the "skeleton" formed by the end posts and top rail.

Prior to plaintiff's injury, he and his colleagues had installed approximately three hundred feet of fencing at the Western Avenue Station Depot job site, which was on a hill.  Plaintiff's injury occurred when a top rail came loose from its cup and fell on plaintiff's back and neck as he was kneeling down to clamp a section of mesh to the bottom of an end post.  No one, including plaintiff, saw the rail fall, and no one had observed any defect or problem with the fence prior to the incident.

---

[1] All citations to exhibits refer to the exhibits to defendant's summary judgment motion.

II.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Harbin v. Burlington Northern R. Co.*, 921 F.2d 129, 130 (7th Cir. 1990) (alteration in original). Under this standard, a plaintiff survives a motion for summary judgment and may proceed to trial only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To determine whether a genuine issue exists, I must "view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254.

"Congress enacted the FELA to require employers to shoulder responsibility for damages attributable in whole or in part to their negligence." *Harbin*, 921 F.2d at 131. In view of FELA's broad remedial purpose, the quantum of evidence a plaintiff must present to withstand summary judgment is "much less" than in an ordinary negligence action. *Id.* (citing cases). Nevertheless, the FELA is not a strict liability statute, *Fulk v. Illinois Cent. R. Co.*, 22 F.3d 120, 124 (7th Cir. 1994), and it does not make the employer an insurer of its employees. *Inman v. Baltimore & Ohio R.R Co.*, 361 U.S. 138, 140 (1959). To prevail on a FELA claim, a plaintiff must

3

establish the traditional common law elements of negligence, including duty, breach, foreseeability, and causation. *Id*.

While it is true that an employee is entitled to a jury if "the proofs justify with reason the conclusion that employer negligence played *any part, even the slightest*, in producing the injury," *Harbin,* 921 F.2d at 131 (quoting *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)) (emphasis in *Harbin*), the import of this principle is merely that under the FELA, an employer will be liable for its negligence even if the injured worker was even more negligent. *Coffey v. Northeast Illinois Regional Commuter Railroad Corp.*, 479 F.3d 472, 476 (7th Cir. 2007) (citing *Norfolk Southern Ry. Co. v. Sorrell*, 549 U.S. 158, 173-74 (2007) (Souter, Scalia, and Alito, JJ., concurring). It does not stand for the proposition that a plaintiff who fails to produce even the slightest evidence of negligence is nevertheless entitled to a jury trial. *Williams v. National R.R. Passenger Corp.,*, 161 F.3d at 1061-62 (7th Cir. 1998).

Defendant argues that plaintiff has failed to identify any evidence from which a reasonable jury could conclude that plaintiff's injury was caused by negligence on its part. In response, plaintiff emphasizes an employer's duty under FELA to provide employees "(1) a reasonably safe workplace; (2) safe equipment; (3) proper training; and (4) suitable methods to perform the assigned work." *Zarecki v. National R.R. Passenger Corp.*, 914 F. Supp. 1566, 1571 (N.D. Ill., 1996). Plaintiff argues that defendant

4

breached these duties in three respects: first, that defendant failed to provide plaintiff with adequate training in fence installation (citing *Phillips v Chesapeake & Ohio Ry. Co.*, 475 F.2d 22, 24 (4th Cir. 1973)); second, that defendant failed to adopt and enforce reasonably safe work methods and procedures (citing *Blair v Baltimore & Ohio R.R. Co.*, 323 U.S. 600 (1945) and *Ybarra v. Burlington Northern, Inc.*, 689 F.2d 147 (8th Cir. 1982)); and third, that defendant failed to inspect, discover and remedy unsafe conditions (citing *Williams v. Atlantic Coast Line R.R., Co.*, 190 F.2d 744 (5th Cir. 1951).[2] Plaintiff contends that the record supports the inference that these breaches were the cause of his injury, apparently on the theory that the rail fell either because it was cut too short (which defendant failed to prevent or discover), or because the hill on which the fence was constructed had a steep grade (which defendant failed to adopt work methods or to train its employees to handle), and that either or both of these conditions could have caused the rail to slip from its cup.

---

[2]Defendant objects that none of these negligence theories was disclosed in plaintiff's complaint. But plaintiff's theories are consistent with his allegations, which identify improper clamping of the top pole as the cause of plaintiff's injury and assert that defendant was negligent, and in any event, federal notice pleading standards--even post-*Twombly*--do not require plaintiff to set forth the legal theory or theories under which he seeks to proceed. *Aaron v. Mahl,* 550 F.3d 659, 666 (7th Cir. 2008)("Under the notice pleading standard, of course, a complaint need not contain legal theories.") A different matter is whether the evidence in the record supports plaintiff's chosen theory, which, as discussed below, I conclude it does not.

Even assuming that plaintiff's evidence is sufficient to enable a jury reasonably to conclude that defendant breached one or more of the specific duties plaintiff invokes (a conclusion that is far from clear, given the multitude of factual dissimilarities between this case and the ones plaintiff cites, though I need not linger on these here), plaintiff's theory of negligence falls apart on the issue of causation. It is plain from the record that plaintiff's hypotheses that the rail was too short or the hill too steep rest on speculation, not on facts. Indeed, the section of plaintiff's opposition brief captioned "Evidence supporting a finding of causation" consists of a two paragraph analysis of the legal standard governing causation under FELA, but it conspicuously fails to identify even a whit of admissible evidence to support the factual underpinnings of plaintiff's theory.[3] Plaintiff purports to dispute defendant's L.R. 56.1 statement that "it is unknown why the pole fell." But the evidence on which he relies is insufficient to raise a triable issue. Plaintiff cites the following deposition testimony of plaintiff's coworker, Kurtis Otero:

---

[3]To be fair, plaintiff's brevity on this issue is likely the result of defendant's curious failure to argue that it is entitled to summary judgment based on the absence of any evidence of causation, instead focusing on the argument that the evidence does not support a breach of due care. Nevertheless, I conclude that defendant has carried its initial burden under Rule 56, by identifying record evidence to support its statement that "it is unknown why the pole fell," and is entitled to summary judgment based on plaintiff's failure to dispute this evidence with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

> Q: If [the top rail is] cut to the proper length, it shouldn't come out once the cup[']s placed in position; is that true?
>
> A: Right, it shouldn't be loose really at all. And we make some pretty good cuts. You know, we got the – we've got the ban saw that makes really nice cuts. But the angle at that length that – it could have tipped out just because of the grade of the hill. That was my belief at the time, and I still believe that could happen. Any slight tug –
>
> ....
>
> Q: Can you give me an idea if you were standing there and standing down here what the difference in the grade would be?
>
> [objection]
>
> A: I would say, just a guess, it would be at least 15 percent grade.

Dep. of Kurtis Otero, Exh. C, 39:24-40:10, 41:21-42:3.

This testimony is not only explicitly speculative regarding the steepness of the hill, it establishes nothing more than Mr. Otero's opinion about the cause of the accident, which in any event tends, if anything, to controvert, rather than support, the theory that the rail was cut "too short." More importantly, Mr. Otero is a fact witness, not an expert, and he does not claim to have seen the accident. As far as the record reveals, no one has ever measured the fallen rail, the distance between the posts to which it was secured, or the grade of the hill, nor has anyone attempted to recreate the accident or otherwise to investigate or exclude other possible causes. In this respect, the case is reminiscent of

7

*Coffey*, in which the Seventh Circuit observed, "[t]he case is remarkable chiefly for the lack of investigation by the plaintiff's lawyer." 479 F.3d at 474. The *Coffey* plaintiff--a Metra engineer--alleged that he was injured after bumping his forehead on the sun visor in the driver's cab of the train. The court found that although his lawyer "conjectured that the bolts that fasten the visor to the wall had been loosened as a result of the train's vibration and the loosening had caused the visor to descend halfway so that it was pointing at the driver's head," the lawyer "never bothered to determine" facts such as the "weight and dimensions" of the visor, nor did the lawyer request to inspect it. Similarly here, plaintiff's "evidence" to support his theory of causation amounts to nothing more than conjecture. However "lenient" the causation standard in FELA cases might be, it is not so lax as to allow a plaintiff to proceed to trial on nothing more than rank speculation by a witness.

III.

For the foregoing reasons, defendant's motion for summary judgment is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: April 28, 2011